CHARLES EDWARD CENTER, JR.,

      Plaintiff,

v.                                     Case No: 8:15-cv-2097-T-36TBM

SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,

      Defendant.

_____/

## <u>ORDER</u>

This cause comes before the Court upon the Defendant Secretary, Department of Homeland Security, Customs and Border Protection Agency's ("CBP") Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the alternative, for Summary Judgment (Doc. 24). In the motion, Defendant contends that this Court lacks subject matter jurisdiction because (1) Plaintiff's exclusive remedy in this case is through the Federal Employees' Compensation Act (FECA); and (2) Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* ("the Act") do not provide jurisdiction for a claim of age discrimination. In the alternative, Defendant contends that summary judgment is appropriate because Plaintiff cannot identify a genuine issue of material fact. Plaintiff Charles Edward Center ("Plaintiff") responded in opposition to the Motion (Doc. 27). The Court, having considered the parties' submissions, including depositions, affidavits, and exhibits, and being fully advised in the premises will now grant Defendant's Motion.

## I.    BACKGROUND AND STATEMENT OF FACTS[1]

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including affidavits and exhibits.

This litigation arises from allegations of retaliation, age and disability discrimination pursuant to the Rehabilitation Act. Plaintiff first became a federal employee in 1991 when he was hired by the Immigration and Naturalization Service ("INS") as an immigration inspector, a position he held until 2003 when INS merged with the CBP. Doc. 24-1, Exh. A; Doc. 24-4, Exh. D, Plaintiff's deposition ("Pl.") at 14:8-11. When Plaintiff became a CBP Officer his supervisors included Chief Todras, Benji Cerrvetti, Greg Brown and possibly one other person. Pl. at 10:8-22; 12:17-27, 13:17-21. Plaintiff was injured on the job on February 27, 1999 while moving two desks, and his injuries got worse over time. Pl. at 15:5-11; 29:8-30:10. Subsequently, Plaintiff sought and received workers' compensation in 2004 or 2005 and was initially out of work on workers' compensation for ten months. Pl. at 15:12. Plaintiff returned to work for one year, after which he went out on workers' compensation for three years before returning to work in 2009. Pl. at 15:12-14; 26:7-16; 41:4-19; 76:4-20.

On March 19, 2008, while Plaintiff was out of work on workers' compensation, Dr. William Dinenberg prepared an independent medical examination report. Doc. 24-5 at pp. 26-28. Dr. Dinenberg concluded that Plaintiff had reached maximum medical improvement with respect to his 1999 injury, and that, in his opinion, Plaintiff was unable to perform the duties of a CBP Officer. *Id.* According to Dr. Dinenberg, Plaintiff's permanent work-related restrictions consisted of standing no greater than one hour; lifting, pushing or pulling no greater than 20 pounds; an eight-hour work day; and work on a computer no greater than one hour at a time without breaks. *Id.* at pp. 31-32.

Pursuant to a letter dated January 23, 2009, DOL requested that CBP offer Plaintiff a permanent job that met his medical restrictions. Doc. 24-5 at p. 23. At the time, Plaintiff was employed as a CBP Officer with a salary level of General Schedule ("GS") level 11, Step 6. Doc.

24-6, Exh. F. In April of 2009, Plaintiff was offered a position as a CBP Technician with a salary at the GS-7 level, Step 10. Doc. 24-5, Exh. E at pp. 50-51. Previously, Plaintiff had been a GS-11 level, Step 6. Pl. at 15:17-19. And despite representations to the contrary, when Plaintiff returned, there were two GS-11 level positions which should have been offered to Plaintiff. Doc. 24-5 at p. 103; Pl. at 82:23-25; 84:8-20. Regardless, at the time, Plaintiff had to either accept the lower grade position or be removed from his position with CBP. Doc. 24-5 at p. 51; Pl. at 21:10-12. Plaintiff chose to return to work as a CBP Technician since he could not perform essential duties of a CBP Officer (his former position). *Id.* at 51; Pl. at 83:15-84:2.

In an email dated July 22, 2010, Jane Mary Greco, National Treasury Employees Union ("NTEU" or "Union") Chief Steward, notified CBP that when Plaintiff was offered the CBP Technician position, there were two vacancy announcements for higher graded entry specialist positions that Plaintiff could have been offered. Doc. 24-5 at pp. 55-56. The entry specialist positions had a full performance level of GS-11. *Id.* Ms. Greco requested a meeting with management to address the issue. *Id.* Based upon Ms. Greco's message, CBP looked into the matter and determined that it had erred in not offering Plaintiff a higher graded entry specialist position. *Id.* at pp. 53-57, 61, 62, 69. CBP also concluded that, at that time, it did not have a vacant GS-11 level position for Plaintiff. *Id.* at pp. 61-69.

In order to correct its error, CBP requested to convert a CBP technician position into a Vessel and Entry Clearance Specialist ("VECS") position, which had a full performance level of GS-11. Doc. 24-5 at pp. 61-69. On March 7, 2011, the CBP's headquarters approved Tampa management's request to convert a technician position to a VECS position. *Id.* at p. 69. Based upon a review of Plaintiff's resume, however, a human resources specialist within the Agency's Minneapolis Hiring Center ("MHC") concluded that Plaintiff was only qualified to perform the

functions of the VECS position at the GS-9 level. *Id.* at p. 70. To ensure Plaintiff would be given the proper grade level, Plaintiff provided an updated resume that was reviewed by the MHC. *Id.* at p. 71. Once again, based upon a review of Plaintiff's updated resume, a human resources specialist within the MHC confirmed that, due to a lack of experience, the highest grade level that Plaintiff qualified for was the GS-9. *Id.* at p. 70.

In June of 2011, Plaintiff was converted to a Vessel Entry Clearance Specialist. Doc. 24-5 at pp. 82, 118-119; Pl. at 9:19-10:10. On December 7, 2011, CBP management in Tampa recommended that Plaintiff receive an early promotion to the GS-11 level. *Id.* at pp. 92-94. The MHC concluded that, pursuant to 5 C.F.R. § 353.301, Plaintiff was to be placed at the GS-11 level, Step 6, pay rate because that was the highest rate he had held in his previous position as a CBP officer. *Id.* at p. 96. On December 23, 2011, Plaintiff was promoted to his full performance level at a GS-11, Step 6. *Id.* Plaintiff is on workers' compensation currently and has been on leave without pay since 2013 at a GS-11 level, Step 6, pay rate which is the same as he was in 2009. Pl. at 37:16, 81:10-17; 99:16-18.

Shortly after being informed of his early promotion, Plaintiff began to question why he was being placed at the GS-11 level, Step 6, pay rate as opposed to Step 7 or Step 8. Doc. 24-5 at p. 113. On January 18, 2012, NTEU Chief Steward Greco interceded on Plaintiff's behalf and requested a meeting with the Agency to address Plaintiff's concerns. *Id.* at p. 99. A meeting was held on February 7, 2012, but the matter of a further increase in Steps remained unresolved. *Id.* at pp. 112-115.

On or about February 3, 2012, Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") Counselor with the Department of Homeland Security. *Id.* at pp. 193-209. Plaintiff then filed a formal EEO complaint with the Department of Homeland Security on March

21, 2012. *Id.* at pp. 205-209. The EEO complaint was dismissed on November 23, 2015 because the claims raised in the complaint were the basis of a pending civil action in a U.S. District Court. Doc. 6-2 at pg. 3.

Plaintiff asserts three counts in the Complaint: Retaliation pursuant to the Rehabilitation Act (Count I); Disability discrimination pursuant to the Rehabilitation Act (Count II); and Age discrimination pursuant to the Rehabilitation Act (Count III). Doc. 1. Plaintiff seeks past and future wages, pain and suffering, back pay, front pay and benefits, expenses, payment for insurance, compensatory and punitive damages, and injunctive relief. *Id.* at ¶¶ 34-35. CBP has now filed the instant dispositive motion. Doc. 24.

## II.    LEGAL STANDARD

### 1.    *Rule 12(b)(1) Lack of Subject Matter Jurisdiction*

A defendant may attack subject matter jurisdiction in two manners: facially and factually. *McMaster v. U.S.*, 177 F.3d 936, 940 (11th Cir. 1999). A facial attack to subject matter jurisdiction requires the Court to assess if the complaint sufficiently alleges a basis for jurisdiction. Fed.R.Civ.P. 12(b)(1). In assessing a motion to dismiss pursuant to Rule 12(b)(1) the Court affords Plaintiff the same safeguards as those provided in opposing a Rule 12(b)(6) motion, it considers all allegations of the complaint as true and is confined to the four corners of the complaint. *See Id.*

By contrast, in assessing a factual challenge to subject matter jurisdiction, the court may consider matters outside of the complaint. *See McMaster*, 177 F.3d at 940; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("'Factual attacks' ... challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"). If a Court finds at any point in the litigation that it

lacks subject matter jurisdiction over an action, it must dismiss the complaint. Fed.R.Civ.P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006).

### 2.    *Summary Judgment-Rule 56*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

## III.    DISCUSSION

### 1.    *Motion to Dismiss*

#### a.    **Retaliation and Disability Discrimination (Counts I and II)**

Defendant asserts a factual challenge to subject matter jurisdiction. Because the Court's power to hear this case is at issue, the Court is free to weigh evidence outside the complaint (e.g. affidavits, declarations, and deposition testimony). *See McMaster*, 177 F.3d at 940; *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). Defendant argues that FECA's exclusive remedies provision bars the Court from considering the merits of Plaintiff's Rehabilitation Act claims. Doc. 24 at p. 11. Defendant cites cases directly challenging aspects of FECA "disability benefits" and/or whether the "injury" was covered under FECA.[2] In response, Plaintiff summarily argues that this is not a federal workers' compensation action.[3] Doc. 27 at p. 2.

### (i)  *Federal Employees' Compensation Act*

FECA is a comprehensive statutory scheme that operates essentially as a federal workers' compensation law, *see* 5 U.S.C. §§ 8101-8193, the purpose of which is "to provide quick and uniform coverage for work-related injuries." *Woodruff v. United States Dept. of Labor,* 954 F.2d 634, 639 (11th Cir. 1992) (per curiam); *Briscoe v. Potter*, 355 F. Supp. 2d 30, 39 (D. D.C. 2004) (FECA "is the federal sector version of workers' compensation."). Under FECA "[t]he United

---

[2]*Russell v. AT & T Techs., Inc.,* 750 F. Supp. 1099 (M.D. Fla. 1990) (suing for on the job injury);*Crane v. Sec. of Lab.*, 2:15-CV-86-SPC-DNF, 2015 WL 3604577, at *1 (M.D. Fla. June 8, 2015), *aff'd*, 15-13648, 2017 WL 1160877 (11th Cir. Mar. 29, 2017) (relating to administration of his workers' compensation claim); *Gibbs v. U.S.,* 517 Fed. App'x 664 (11th Cir. 2013)(unpublished) (challenging a reduction in disability benefits); *Kelley v. U.S.,* 792 F. Supp. 793 (M.D. Fla. 1992), *aff'd sub nom. Kelley v. Civ. Air Patrol*, 987 F.2d 774 (11th Cir. 1993)(seeking compensation for sustaining an injury while in performance of his duties).

[3]Plaintiff maintains that there has been an EEOC administrative action which the Agency is unlikely to have conducted if there was no possibility of actionable employment discrimination under the Rehabilitation Act. Doc. 27 p. 2. In the EEO complaint, Plaintiff stated the following: brought back to work by a threatning [sic] letter at a lower grade and placed in hostile work enviroment [sic] by management. Ignored by management regarding return to work and [Office of Workers' Compensation Programs] issues, suffered financial, physical and mental hardship. Doc. 24-5 p. 205.

States shall pay compensation ... for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102(a). FECA furnishes the exclusive remedy against the United States for federal employees who sustain damages because of a work-related injury that is within the scope of FECA's coverage. *See* 5 U.S.C. § 8116(c); *Briscoe*, 355 F. Supp. 2d at 39 (noting that "[l]ike State workers' compensation programs, FECA provides the exclusive remedy for claims against the employer— the United States—for workplace injuries and illnesses."); *United States v. Lorenzetti*, 467 U.S. 167, 169 (1984) ("[T]he United States' liability for work-related injuries under FECA is exclusive...."). In addition, FECA authorizes the Secretary of Labor to grant or deny compensation awards, to modify previous compensation awards, and to grant compensation awards that were previously denied or discontinued. *See* 5 U.S.C. § 8128(a). Such decisions by the Secretary are final and not subject to judicial review. *See* 5 U.S.C. § 8128(b). "Where FECA applies, its remedy is exclusive and bars all other claims for compensation against the Government." *DiPippa v. United States*, 687 F.2d 14, 16 (3d Cir. 1982); *accord Briscoe*, 355 F. Supp. 2d at 39.

### (ii)    *Rehabilitation Act and FECA*

The Court now turns to Defendant's argument that FECA's exclusive remedies provision bars the Court from considering the merits of Plaintiff's Rehabilitation Act claims. Although the Eleventh Circuit has not considered the issue, several courts have held that to the extent a plaintiff is using the Rehabilitation Act to obtain judicial review of a FECA decision or obtain benefits under the FECA, the court is without subject matter jurisdiction to review such a claim. *See Curry v. Shinseki*, 2:09-CV-02441-AKK, 2011 WL 13129972, at *12 (N.D. Ala. Aug. 31, 2011) (noting that the Eleventh Circuit has not yet considered the issue) *aff'd in part, vacated in*

*part sub nom. Curry v. Sec., Dept. of Veterans Affairs,* 518 Fed. Appx. 957 (11th Cir. 2013)

(unpublished); *Meester v. Runyon,* 149 F.3d 855, 857 (8th Cir. 1998) (holding that a plaintiff

may not allege disability discrimination under the Rehabilitation Act to secure judicial review of

the Secretary of Labor's FECA compensation decision); *Luellen v. Henderson,* 54 F. Supp. 2d

775, 783 (W.D. Tenn. 1999) ("decisions concerning the suitability of federal agency job offers to

partially disabled employees have been exclusively committed to the Secretary of Labor under

the FECA and cannot be collaterally attacked or reviewed under the Rehabilitation Act"); *Taylor

v. Potter,* 124 Fed. Appx. 293, 2005 WL 746617, at *1 (5th Cir. Apr. 1, 2005) (Table Decision,

text in Westlaw) ("Taylor is also prohibited from alleging disability discrimination in violation

of the Rehabilitation Act in order to secure judicial review of the Department of Labour's [sic]

determination.").

On the other hand, courts have held that if a plaintiff seeks to obtain *separate* relief

available to them under, *inter alia,* the Rehabilitation Act's disability discrimination prohibition,

jurisdiction exists to entertain the claims. *See, Morris v. Roche,* 182 F. Supp. 2d 1260, 1274

(M.D. Ga. 2002) (noting that anti-discrimination statutes, including the Rehabilitation Act,

provide different relief for an entirely separate injury and holding that "recovery of FECA

benefits does not bar a subsequent claim for [disability] discrimination") (citing *Nichols v.

Frank,* 42 F.3d 503, 515 (9th Cir. 1994) (Title VII), *abrogated on other grounds by Burlington

Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775

(1998); *Dubee v. Henderson*, 56 F. Supp. 2d 430, 432-34 (D. Vt. 1999) (noting that receipt of

FECA benefits does not bar claims under the Rehabilitation Act and Title VII); *Reidy v. Runyon,*

971 F. Supp. 760, 769-71 (E.D.N.Y. 1997) (FECA does not operate as a bar to a Title VII or

Rehabilitation Act recovery); *Miller v. Bolger,* 802 F. 2d 660, 663-664 (3d Cir. 1983) ("FECA

was intended only to be a substitute for suits against the United States for tortious injury" and nowhere in legislative history "is there any mention of FECA recovery as precluding actions for discrimination"); *Prescott-Harris v. Fanning*, CV 15-1716 (RC), 2016 WL 7223276, at *5 (D. D.C. Dec. 12, 2016) (noting that "FECA applies to work-related injuries, not claims of discrimination, which are different causes of action aimed at redressing different types of harms" and ultimately deciding that Plaintiff could proceed under the Rehabilitation Act for discrimination-based damages).

Here, Plaintiff's Complaint alleges that, *but for*[4] the discrimination/retaliation, he would not have been placed and/or kept in the lower grade positions. In regard to the relief[5] he seeks, Counts I and II, respectively, state that Plaintiff is seeking "rightful compensation grade level for years of work" and "proper compensation grade level…proper retirement and compensation." Plaintiff appears to be seeking judicial review of the Secretary of Labor's FECA compensation decision under the guise of a discrimination claim or retaliation claim. After careful consideration, this Court finds that it lacks subject matter jurisdiction in this case. Even though Plaintiff alleges discriminatory actions based on his disability, the relief he ultimately seeks, placement in the "proper" grade, implicates a prior FECA compensation decision. As a result, this Court is divested of subject matter jurisdiction to review such claims. Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction as to Counts I and II is granted.

---

[4] "Plaintiffs claiming intentional discrimination under the Rehabilitation Act must show that they were discriminated against '*solely* by reason of [their] disability,' 29 U.S.C. § 794(a) (emphasis added), but the ADA requires only the lesser 'but for' standard of causation." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (citation omitted).

[5] He also seeks, *inter alia*, pain and suffering, back pay, front pay and benefits. Doc. 1 at ¶ 34.

**b.      Age Discrimination (Count III)**

Plaintiff alleges that the Defendant knowingly and willfully discriminated against him on the basis of his age in violation of the Rehabilitation Act. Doc. 1 at ¶33. The Rehabilitation Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability. 29 U.S.C. § 791. The Act defines "individual with a disability" as any person who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B). In turn, "major life activities" are "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3).

In Count III, Plaintiff alleges that his age (64) was a determining factor in Defendant's decision to offer him work at a substantially lower compensation graded level than he was entitled. *Id.* at 32. Here, Plaintiff has failed to assert the elements of a claim under the Act. *Mullins,* 228 F.3d at 1313 (noting that the Act addresses discrimination and retaliation based on a qualified individual with a *disability*). The Act does not include or define age as a disability. As such, Defendant's motion is granted as to Count III.

**2.      *Defendant's Motion for Summary Judgment***

Alternatively, to the extent the Court is in error and does have subject matter jurisdiction as to Counts I and II, it will address the Defendant's Motion for Summary Judgment.

### a.        Disability Discrimination (Count II)

As previously noted, the Rehabilitation Act "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." *Mullins,* 228 F.3d at 1313. To establish a prima facie case of discrimination under the Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability. *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999); *Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir. 2000)). The second element requires a court to consider whether a plaintiff is a "qualified individual," meaning that he, with or without any reasonable accommodation, can perform the essential functions of the job. 42 U.S.C. § 12111(8). The plaintiff bears the ultimate burden of persuasion with respect to demonstrating that an accommodation is reasonable. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997).

Moreover, a plaintiff claiming intentional discrimination under the Rehabilitation Act must show that he was discriminated against *solely* by reason of the disability. *See Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). Under the Rehabilitation Act, a plaintiff can prove disability discrimination through either direct evidence of discrimination, or through circumstantial evidence. When a plaintiff relies upon circumstantial evidence to establish a discrimination claim, whether it be based on disability, or retaliation, the district court examines it using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See Gilbert v. U.S. Dept. of J.,* 252 Fed. Appx. 274, 276 (11th Cir. 2007) (unpublished) (citing *Wascura v. City of S. Miami,* 257 F.3d 1238, 1242-43 (11th Cir. 2001) (disability discrimination); *Sutton v. Lader,* 185 F.3d at 1207 n.5 (stating that the ADA rules and standards apply to Rehabilitation Act claims).

Within this framework, if the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to put forth a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. 1817. Once the defendant articulates a legitimate reason, "the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Crawford v. City of Fairburn, Ga.,* 482 F.3d 1305, 1308 (11th Cir. 2007) (citing *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004)). "The plaintiff must meet the reason proffered head on and rebut it." *Id.* (citation omitted).

Here, there is no direct evidence of discrimination in the record. Because there is no direct evidence, the Court must consider whether Plaintiff can establish a prima facie case through circumstantial evidence. For purposes of the motion, Defendant concedes that Plaintiff will be able to satisfy the first and second prongs. Therefore, the Court will address the remaining prong, namely, whether the Plaintiff was subjected to unlawful discrimination as the result of his disability.

Plaintiff points to the following as evidence of unlawful disability discrimination:

> (1) Ron Johnson (his supervisor prior to 2009) asked him in 1999 after the injury "[a]re you really hurt that bad?" and would not accommodate his injury in order for Plaintiff to work overtime duty.[6] Pl. at 52:20-53:5; 33:19-21.
>
> (2) Chief Todras "was not out and out rude, but he was not a bit friendly either to me." *Id.* at 38:11-14.
>
> (3) Delay and lack of assistance with workers' compensation benefits upon his return in 2009. *Id.* at 41:20-23; 16:2-9. Doc. 27-1 ¶ 5.
>
> (4) Assistant Port Director John McMahon ignored Plaintiff, treated him with hostility and knew that what was happening to Plaintiff was wrong. *Id.* at 48:24-49:1; 64:12-16-65:4.

---

[6] It appears that this happened prior to 2009. Pl. at 53:2-58:15.

(5) Alice Adam would not address his concerns. *Id.* at 43:5-14.

(6) Denise Crawford, district director, and Norma Cyr, assistant district director, lowered his salary upon his return. *Id.* at 58:5-59:11; 83:12.

(7) Two GS-11 positions were available but never offered. Doc. 27-1, Exh. A at ¶ 5.

(8) Return to work letter threatened termination if he did not accept the CBP technician position offered. *Id.* at ¶ 6.

(9) VECS job grade was only GS 11, level 6. *Id.* at ¶ 9.

Plaintiff further maintains that everyone knew about his EEO claim against the CBP. *Id.* at 87:24-89:8. In regard to his VECS position, Plaintiff submits that it was a glorified secretarial position. *Id.* at 75:7. He further claims that his supervisors humiliated him by placing his desk in the middle of the room. *Id.* at 75:17-23. Although Plaintiff stated that he felt he was discriminated against, he could not identify why he felt that way. *Id.* at 37: 2-9.

On the record before this Court, Plaintiff has failed to establish that anyone at CBP intentionally discriminated against him because of his disability. Defendant readily admitted that it was a mistake to return him to work with a lower salary. Defendant's mistake is not evidence of intentional discrimination. Moreover, lack of communication skills and/or failure to address concerns in the exact matter/timeframe desired by Plaintiff is also not evidence of intentional discrimination. Plaintiff has, thus, failed to establish a prima facie case of discrimination.

Nonetheless, even if Plaintiff had established that Defendant's action were intentionally discriminatory, he has failed to establish that CBP's explanation for placing him in a lower paying position was a pretext for intentional discrimination. Plaintiff concedes, and the record reflects, that he was unable to return to his former position as an officer. There were several essential tasks required to be performed by a CBP officer that Plaintiff simply could not perform. Plaintiff has not pointed to any evidence which shows that the explanation for placing him in the

lower salaried CBP technician position was a pretext for intentional discrimination. Indeed, Plaintiff has failed to rebut CBP's legitimate reason for its action. Except for conclusory accusations regarding why he was treated in a certain way, Plaintiff fails to rebut/address Defendant's reason for its employment actions. And without more, Plaintiff has failed to establish that Defendant's reasoning was not the 'true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Accordingly, Defendant's Motion for summary judgment will be granted as to Count II.

### b.      Retaliation (Count I)

The anti-discrimination provision of the Rehabilitation Act incorporates the anti-retaliation provision of the ADA. *See Holbrook v. City of Alpharetta, Georgia,* 112 F.3d 1522, 1526 n.2 (11th Cir. 1997). Therefore, the *prima facie* case for retaliation under the Rehabilitation Act is the same as that under the ADA. *Id.*  In order to establish a *prima facie* case of retaliation, a plaintiff may show that: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse employment action; and (3) there was some causal relationship between the two events. *See Burgos-Stefanelli v. Sec., U.S. Dept. of Homeland Sec.,* 410 Fed. App'x 243, 246 (11th Cir. 2011) (unpublished) (citing *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir. 2008).

Here, Plaintiff contends that his statutorily protected activity is (1) accepting work offered to him by the Agency; (2) inquiring as to the availability of suitable work at his compensation grade level; and (3) filing an inquiry. Doc. 1 ¶ 24. Further, Plaintiff contends that the adverse employment action is denial of his earned rightful compensation grade level for years of work and a lower paid position. *Id.* Plaintiff also maintains that the causal link between these events is demonstrated, at least in part, by the close proximity in time between them. *Id.* There is

little doubt that the first element is satisfied since it is well established that the filing of an EEO claim is a "statutorily protected activity." *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600 (11th Cir.1986). However, Defendant maintains, and this Court agrees, that Plaintiff has failed to establish the second and third elements of a retaliation claim.

As to the second element, Plaintiff has not shown an adverse employment action due to his protected activity. Plaintiff has not shown that any of his supervisors knew of the February or March 2012 EEO complaint, except Ron Johnson, who was not plaintiff's supervisor. The "*gravamen* of a retaliation claim requires that an employer act with intent, *i.e.,* be aware of the employee's protected conduct before the adverse action is taken…" *Marcelin v. Eckerd Corp. of Florida, Inc.,* 8:04-CV-491-T-17MAP, 2006 WL 923745, at *9 n.2 (M.D. Fla. Apr. 10, 2006) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir. 1998). In addition, Plaintiff has not been fired or disciplined since the filing of his EEO complaint. The record reflects that despite a reduction in salary, Plaintiff received appropriate workers' compensation and was ultimately placed in a position that allowed him to obtain the same salary level he had pre-injury. Similarly, plaintiff has failed to satisfy the third element because he cannot establish causation. Accordingly, Defendant's motion for summary judgment as to Count I will be granted.

### c.    Age Discrimination (Count III)

As discussed, *supra*, Plaintiff has failed to establish that the Rehabilitation Act applies to discrimination on the basis of age. By its clear terms, the Act applies to disabilities. As such, Defendant's motion for summary judgment is also appropriate as to Count III.

## IV.    CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the alternative, for Summary Judgment (Doc. 24) is **granted.**

2. The Clerk is directed to enter judgment in favor of the Defendant and against Plaintiff.

3. The Clerk is further directed to close this file.

**DONE AND ORDERED** in Tampa, Florida on September 5, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any